## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ROBERT GIANNACCIO,** **ALENE GIANNACCIO** **PLAINTIFFS,** : : : | |
| v. : | Civil No. 3:12CV609 (DJS) |
| : : | |
| **UNITED STATES OF AMERICA,** : : | |
| **DEFENDANT.** : | |

### MEMORANDUM OF DECISION AND ORDER

This is an action for damages arising out of the injuries that the plaintiff, Robert Giannaccio ("Giannaccio"), sustained when a section of the metal catwalk at the Giaimo Federal Building ("Giaimo Building"), at 150 Court Street, New Haven, Connecticut gave away under him, causing him to fall onto a concrete slab. It is brought pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b) and common law tenets concerning negligence. Giannaccio's wife, Alene Giannaccio ("Alene") alleges loss of consortium as a result of the harms and losses sustained by Giannaccio.

The defendant has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. The issues presented are: (1) whether the independent contract exception under the FTCA precludes this action; (2) whether the discretionary function exception under the FTCA insulates the United States from liability in this action; (3) whether the United States had notice of the alleged dangerous condition; and (4) whether the statute of repose within Conn. Gen. Stat. § 52-584a bars these claims.

For the reasons hereinafter set forth, the motion for summary judgment is **DENIED.**

1

I. FACTS

The General Services Administration ("GSA"), an independent agency of the United States government, owns and manages the Giaimo Building. Between 1995-96, at the request of GSA, Jansen and Rogan Consulting Engineers designed and supervised the construction of a metal catwalk around a cooling tower on the top of the Giaimo Building. Allstate Boiler, Inc. was the primary contractor for the project. In 2002-03, GSA undertook a $20 million dollar renovation that addressed the structural integrity of the Giaimo Building. Work done at that time included replacing the ladder leading to the metal catwalk that surrounds the cooling tower.

In 2008 GSA executed a three-year contract ("Contract") with Northern Management Services ("Northern") for "Janitorial and Mechanical Maintenance Services" at the Giaimo Building.[1] (Doc. # 72-5, at 1). The specific objective of the Contract was "to operate the [Giaimo Building] . . . in a safe and environmentally responsible manner; maximize the life expectancy of the equipment; operate the building in the most operationally and energy-efficient manner; and to maximize tenant and public satisfaction in their environment." (Doc. #72-6, at 1). Northern "[a]ssume[d] full responsibility and liability for compliance with all applicable regulations pertaining to the health and safety of its personnel during the execution of work" and agreed to "[h]old the Government harmless for any action or omission on its part or that of its employees or subcontractors which results in illness, injury or death." (Doc. # 72-5, at 41). The Contract was in effect on May 17, 2010, the date of the incident that is the subject of this action.

According to the Contract, Northern was required to "provide all labor, equipment, and materials necessary to perform all [Incidental and Minor] architectural, mechanical, electrical,

---

[1] The Contract also covered the same services at two other federal buildings.

2

plumbing and structural repairs to the interior and exterior of the facility and related site improvements (excluding landscaping). . . . A repair is any unscheduled work which is required to prevent a piece of equipment or system component from breakdown/failure; return it to service, enhance, or replace if required. Repairs are considered either Incidental or Minor based on [] dollar thresholds. . . ." (Doc. #72-6, at 7). Incidental Repairs were defined as those repairs "[n]ot exceeding $2,000.00." (*Id.* at 8). Minor Repairs were those costing "$2,000.01-$50,000.00." (*Id.*) Minor Repairs were required to be "immediately reported to the COR/PM."[2] (*Id.*) Repairs above the Minor Repair threshold were beyond the scope of the Contract.

In May 2010, Northern employee David Colbourn inspected the cooling tower on the roof of the Giaimo Building. During this inspection, the cooling tower, which was utilized during the summer months, was turned on. A noisy bearing in the cooling tower alerted Colbourn to the need for repair work, which "was going to be a good size job." (Doc. # 75-2, at 32, p. 32:22). Northern contacted Siemens Corporation ("Siemens") to "see how much it would cost" for the necessary cooling tower repair work. (*Id.* at 32, p. 32:22-24). Northern did not inform GSA of its decision to consult with Siemens. Siemens arranged for another mechanical contractor, Giannaccio, to attend the inspection. Neither GSA nor Northern was aware that Giannaccio was going to accompany a Siemens employee to the Giaimo Building for the inspection of the cooling tower.

On May 17, 2010, Colbourn escorted Siemens employee Tom Ciriello, Giannaccio, and Giannaccio's father to the roof of the Giaimo Building to inspect the cooling tower. During the

---

[2] The Contracting Officer's Representative (COR) was the individual "responsible for the day-to-day administration of the contract." (Doc. #72-5, at 23). The Property Manager (PM) was "the primary GSA contact for the building tenants at a particular building or group of buildings. This individual may be designated [as] the COR." *Id.*

course of the inspection, Giannaccio "stepped or hopped" down from the cooling tower onto one of the sections of metal grating that compose the catwalk surrounding the tower. (Doc. #75-3, at 7, p. 52:16). At that point "[t]he grating gave way and [Giannaccio] went right through" and fell approximately fifteen feet onto a concrete slab. (*Id.* at 7, p. 52:18-19). Giannaccio sustained various injuries as a result of the fall.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where a movant makes a clear showing that "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party, here the United States, bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment the Court must construe the evidence in the light most favorable to the plaintiffs, here the Giannaccios, drawing all reasonable inferences and resolving all ambiguities in their favor. *Colavito v. N.Y. Organ Donor Network, Inc.,* 438 F.3d 214, 217 (2d Cir. 2006). Uncertainty as to the true state of the factual record that "can be resolved only by a finder of fact because [the uncertainty] may reasonably be resolved in favor of either party" precludes summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B. SUBJECT MATTER JURISDICTION

Before addressing whether the FTCA applies in this case, the Court wishes to address the Giannaccios' argument that the District Court's denial of the United States' motion to dismiss, or in the alternative, its motion for summary judgment, on December 21, 2012, remains the "law of

the case" as to any claim by the United States that the Court lacks subject matter jurisdiction over this action. (Doc. #75-1, at 13). In its prior motion, the United States argued that it was immune from liability under the FTCA for the negligence of an independent contractor, i.e., Northern. The Court denied the United States' motion because it did not see anything in the Contract that said Northern had "an obligation to maintain the structural integrity of the catwalk." (Doc. #75-12, at 8, p. 8:7-9). The Court also advised defendant's counsel, however, that "[i]f you can demonstrate through affidavit or otherwise that they [Northern] had an obligation either to build or repair, structurally - - hire a structural engineer to make sure it in fact was safe, pull that out and we'll get another summary judgment motion and maybe you'll win it." (*Id.* at 8. P. 8:2-6). Therefore, sovereign immunity remains an available defense for the United States in the pending motion for summary judgment.

"Subject matter jurisdiction is a threshold question that must be resolved . . . before proceeding to the merits. The absence of subject matter jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction. This principle is reinforced when it comes to sovereign immunity because express abrogation is a prerequisite to subject-matter jurisdiction." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (internal quotation marks and citations omitted). The party invoking federal subject-matter jurisdiction carries the burden of establishing that jurisdiction does exist. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Under the FTCA, the Government waives its sovereign immunity to suits stemming from the negligent acts of its employees in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the incident that is the subject of this action occurred

in Connecticut, the law of Connecticut applies. The FTCA's statute of limitations is a prerequisite to the United States' waiver of sovereign immunity.[3] *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which is was presented.").

Waivers of sovereign immunity must be strictly construed, in terms of their scope, in favor of the Government. *Lane v. Pena,* 518 U.S. 187, 192 (1996). "Although the FTCA 'waives sovereign immunity,' that waiver is, nonetheless, a limited one." *King v. United States*, 491 F. Supp. 2d 286, 292 (D. Conn. 2007) (citing *United States v. Idaho*, 508 U.S. 1, 6-7 (1993)). A condition of that waiver should neither be narrowed nor extended beyond that which Congress intended. See *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions . . . to such waiver." *United States v. Orleans*, 425 U.S. 807, 814 (1976). "If a claim falls within [one of the exceptions], the court lacks jurisdiction to entertain the claim." *Fazi v. United States*, 935 F.2d 535, 537 (2d Cir. 1991). The United States asserts that two exceptions to the FTCA apply in this case: the independent contractor and discretionary function exceptions.

### C.  INDEPENDENT CONTRACTOR EXCEPTION

The United States argues that "under the FTCA, the United States has not waived sovereign immunity for the negligence of independent contractors hired by the government . . . ." (Doc. #72-2, at 2). Specifically, the United States contends that Northern is an independent

---

[3] In *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015), the Supreme Court clarified that the FTCA's time bars, while mandatory, "are nonjurisdictional and subject to equitable tolling."

contractor that contractually "bore the responsibility to insure that the catwalk was . . . safe for use because it surrounded and was attached to the water cooling tower." (*Id.* at 12).

The Giannaccios respond that "the allegations in the plaintiffs' Complaint seek to hold GSA directly liable as the owner and operator of the Premises for failing to repair the structural defect and/or warn about the existence of the defect." (Doc. #75-1, at 13). According to the Giannaccios, the United States, not its contractor, had a non-delegable duty "to repair hidden defects or warn invitees of the presence of hidden defects." (*Id.* at 16).

The FTCA waiver of sovereign immunity does not extend to independent contractors. S*ee Leone v. United States*, 910 F.2d 46, 49 (2d Cir.1990). "Whether a person is a government employee or an independent contractor is a question of federal law." *Id.* at 49. For purposes of the FTCA, the term "'[e]mployee of the government'" includes . . . officers or employees of any federal agency. . . ." 28 U.S.C. § 2671. While courts may "look to the law of torts and agency to define 'contractor,' [the FTCA] does not leave them free to abrogate the exemption that the Act provides." *Logue v. Unites States*, 412 U.S. 521, 528 (1973). General supervision and oversight by a federal agency is insufficient to qualify a contractor as a government employee under the FTCA. "The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government." *Leone*, 910 F.2d at 50.

The Giannaccios argue that GSA had a duty to keep the Giaimo Building safe that was non-delegable under state law, citing *Smith v. Greenwich*, 278 Conn. 428, 458 (2006) ("The nondelegable duty doctrine is . . . an exception to the rule that an employer may not be held liable for the torts of its independent contractors."). It is well established, however, that "any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity

from suits for injuries caused by its independent contractors." *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997); *see also Basher v. United States*, No. 5:92- CV-186 (JAC), 1995 WL 646343, at *3 (D. Conn. March 14, 1995) ("the [FTCA] does not authorize claims against the government premised on a nondelegable duty, which the United States has nevertheless delegated to an independent contractor").

In the present case, GSA contracted with Northern "for Janitorial and Mechanical Maintenance Services . . . ." (Doc. #72-5, at 1). Northern was "to operate the [Giaimo Building] . . . in a safe and environmentally responsible manner; maximize the life expectancy of the equipment; operate the building in the most operationally and energy-efficient manner; and . . . maximize tenant and public satisfaction in their environment." (Doc. #72-6, at 1). Northern was responsible for "provid[ing] all labor, equipment, and materials necessary to perform all architectural, mechanical, electrical, plumbing and structural repairs to the interior and exterior of the facility and related site improvements (excluding landscaping)." (*Id.* at 7).

The Contract provided further that "[a] list of equipment requiring preventive maintenance under this contract is found in Exhibit M-1." (*Id.* at 5). At his deposition, John Silva, who is a GSA Branch Chief, testified that while the cooling tower would have been on the equipment list, he "[didn't] recall seeing the catwalk" on the list. (Doc. # 75-6, at 11, p. 11:17-19). The "equipment inventory list" for the Giaimo Building submitted in connection with the defendant's motion includes the "cooling tower," but does not specifically mention the catwalk. (Doc. # 72-8, at 49).

The Contract called for GSA and Northern to attend monthly quality control meetings. "The purpose of these meetings [was] to discuss the contractor's performance, areas of deficiencies, areas of satisfaction and tenant needs or concerns." (Doc. #72-5, at 20). The

Contract specified that this quality assurance process "[should] not interfere with the Contractor's process" and "[e]valuate[d] the results against the standard, not the process." (*Id.* at 24). "The Contractor, and not the Government, [was] responsible for management and quality control actions to meet the terms of the contract. . . . The contractor [was] required to develop a comprehensive program of inspections and monitoring actions." (Doc. #72-6, at 9). Northern "[a]ssume[d] full responsibility and liability for compliance with all applicable regulations pertaining to the health and safety of its personnel during the execution of work" and agreed to "[h]old the Government harmless for any action or omission on its part or that of its employees or subcontractors which results in illness, injury or death." (Doc. # 72-5, at 41).

Under the terms of the Contract, GSA broadly delegated its maintenance responsibilities to Northern, as well as the responsibility to determine the processes by which to achieve the contract requirements and day-to-day operations. Though GSA retained some oversight over Northern's performance through the monthly performance meetings, this type of general oversight is insufficient to qualify a contractor as a government employee within the FTCA. *See Leone*, 910 F.2d at 50. Therefore, the Court concludes that Northern acted as an independent contractor in its execution of the terms of the Contract.

Because Northern was an independent contractor, however, does not necessarily protect the United States from liability. There exists a genuine issue of material fact as to whether the United States delegated responsibility for the catwalk to Northern when it required Northern to "provide all labor, equipment, and materials necessary to perform all architectural, mechanical, electrical, plumbing and structural repairs to the interior and exterior of the facility and related site improvements . . . ." (Doc. #72-6, at 7). While the cooling tower is listed on the Contract as one of the pieces of equipment to be maintained by Northern, the catwalk is not specifically

9

mentioned. Evidence before the Court indicates that the catwalk was periodically inspected by representatives of both GSA and Northern. Additionally, some of the allegations in the present case relate to a time that predates the Contract, e.g., the design and construction of the catwalk in 1995-96. The Court finds that the uncertainty as to whether Northern was responsible for the condition of the catwalk by virtue of the provisions of the Contract must be resolved by the finder of fact. Consequently, the defendant's motion is denied as to the independent contractor exception claim.

### D.  DISCRETIONARY FUNCTION EXCEPTION

The United States argues that "[t]he discretionary function exception . . . insulates the United States from tort liability stemming from an employee's actions and decisions if the action challenged in the case involves the permissible exercise of policy judgment." (Doc. #72-2, at 18). Specifically, the United States argues that the present case satisfies the applicable two-step analysis for determining whether an agency's actions fall under the discretionary function exception because (1) "no federal statu[t]e, regulation or policy specifically . . . mandat[es] how GSA must maintain its buildings," and (2) "Plaintiffs' allegations with respect to the inspection of the catwalk after [it was] erected, failure to make periodic inspection of the catwalk after it was in place and failure to properly maintain the catwalk after installation implicate exactly the type of 'second guessing' of administrative decisions of GSA and how it chooses to manages its . . . real estate portfolio" that the discretionary function exception is designed to prevent. (*Id.* at 19, 21). The United States further asserts that "GSA's decision to have Northern maintain the Giaimo Building is a policy judgment made by GSA in order to accomplish its mission." (*Id.* at 21).

The Giannaccios respond that "[t]he plaintiffs are not seeking to hold the defendant liable for the conduct of an independent contractor, and the evidence clearly indicates that the . . . Contract with Northern did not cover the catwalk." (Doc. # 75-1, at 17). The Giannaccios also argue that they "rely on the legal duty the defendant owed Mr. Giannaccio, as a business invitee, to keep the Premises in a safe condition pursuant to Connecticut common law and the FTCA." (*Id* at 18).

The discretionary function exception exempts from liability under the FTCA "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception involves a two-step analysis. First, the challenged conduct must involve "'an element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz,* 486 U.S. at 536). Second, the exception "'protects only governmental actions and decisions based on considerations of public policy.'" *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537). With regard to the second step of the analysis, the proper "focus of the inquiry is not on the agent's subjective intent in exercising the discretion . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.  Where both steps of the two-step analysis are satisfied, the conduct falls outside of the FTCA's waiver of sovereign immunity and "the court lacks jurisdiction to entertain the claim." *Fazi v. United States*, 935 F.2d 535, 537 (2d Cir. 1991).

The selection and supervision of contractors are discretionary functions that involve elements of judgment or choice. *See Bowers v. United States*, 931 F. Supp. 2d 358, 369-70 (D. Conn. 2013) ("Because Plaintiffs' claims of negligent selection and supervision . . . involve elements of judgment and choice as to how best to execute [a] court order, these claims are dismissed pursuant to the discretionary function exception."); *Carter v. United States*, No. 96 Civ. 9139 (MBM), 1998 WL 744009, at *4 (S.D.N.Y. Oct. 26, 1998) ("Courts have repeatedly held that the selection and supervision of contractors is a discretionary function, and thus cannot result in governmental liability."). Indeed, "[a]n FTCA claim that the government negligently failed to discover a latent defect after it properly delegated its inspection duties would essentially be a challenge to the government's decision to delegate its inspection duties; this is precisely the type of challenge that is precluded by the discretionary function exception." *Berrien v. United States*, 711 F.3d 654, 661 (2013).

The Giannaccios contend that Connecticut common law imposed a duty on the United States to maintain the Giaimo Building in a safe condition. As was previously noted, however, "any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors." *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997). Common law duties imposed on landowners do not deprive the GSA of the benefit of the discretionary function exception. *See Hall v. United States*, 825 F. Supp. 427, 433 (D.N.H. 1992) ("the common law duty alluded to by plaintiffs is not the type of mandatory duty that would deprive the GSA's activities of the benefit of the 'discretionary function' exception").

There are, however, limits to discretionary immunity given the FTCA's purpose to compensate the victims of negligence in circumstances where the government, if a private

12

person, would be liable. *See Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955) (holding the government liable for failure to warn vessels that a lighthouse was not functioning properly, even though the initial decision to operate and maintain the lighthouse was discretionary); *Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992) ("The fact that an independent contractor may have been responsible for [the plaintiff's] fall . . . cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort.").

One such limit to discretionary immunity is where the plaintiff alleges employee negligence not based on considerations of public policy. *See Andrulonis v. United States*, 952 F.2d 652, 655 (2d Cir. 1991) ("we do not agree that [a government employee's] negligent omission in this case could implicate any policy considerations and thereby warrant protection under the discretionary function exception"). In considering whether a governmental action was based on considerations of public policy, some courts have determined that "'where the challenged governmental activity involves safety considerations, the rationale for the [discretionary function] exception falls away and the U.S. will be responsible for the negligence of its employees.'" *Cyr v. United States*, Case No. 5:10-cv-194, 2011 U.S. Dist. LEXIS 66307, at *33 (D. Vt. June 21, 2011) (quoting *Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir. 1990)).

As noted in the previous section of this decision, there is uncertainty as to whether Northern was responsible for the condition of the catwalk by virtue of the provisions of the Contract. To the extent that Northern was responsible for the condition of the catwalk, the discretionary function exception would apply. To the extent that the United States retained that responsibility, "the rationale for the [discretionary function] exception falls away." *Id.*  Since this

13

factual question must be determined by the jury and not the Court, the defendant's motion is denied as to the discretionary function exception claim.

### E.  NOTICE, ACTUAL OR CONSTRUCTIVE

The United States argues that: "it did not have reasonable notice, actual or constructive, of the alleged dangerous condition, which is a condition precedent to liability under Connecticut law and under the FTCA." (Doc. #72-2, at 2). More specifically, the United States contends that "Northern and the government were not aware of any problem with the catwalk prior to the date of the fall . . . . Many people had been on the catwalk in the approximate fifteen years that it had been [in] existence] and nobody had fallen or been injured." (*Id.* at 9-10). The United States provides evidence from Northern employee Joseph Parise that he had not "notice[d] any sections of the catwalk bending or bowing out" prior to the accident involving Giannaccio. (Doc. # 72-3, at 143, p. 72:4-7). Northern employee David Colbourn also testified that "[d]uring the 50 to 60 times that [he] had occasion to be on the catwalk" prior to the accident he had never found it to be unsafe. (Doc. # 72-4, at 59, p. 30:17-20).

The Giannaccios respond that "GSA, as the owner of the building, had its employee Mr. Nieves on site when the catwalk was installed, and [] he was required to inspect the catwalk after it was erected. Thus, the defendant is charged with having actual knowledge that the catwalk was installed with one section of grating in at a different direction than all the surrounding sections, without any under supports, and without any metal fasteners connecting it to the surrounding sections." (Doc. #75-1, at 10-11). The Giannaccios argue further that the United States had constructive notice of the defective catwalk on the basis of its routine inspections of the Giaimo Building from 1995 to 2010. The Giannaccios reference an email, dated January 24, 2012, from GSA employee Kevin McGill to his superiors in which McGill wrote, "There could be other

14

factors involved but based on observations I would say that the design that is there now is what caused the thing to fail. It may not be clear but the man fell through the grating because the grating has too much span and allowed the grate to bow. . . . You can tell immediately when you see it that it is not load hardy sidewalk grate." (Doc. # 75-5, at 32, p. 32:16-21 and at 33, p. 33:9-10).

To prevail on a claim of negligence under Connecticut law, a plaintiff must establish duty, breach of that duty, causation, and actual injury. *See Winn v. Posades*, 281 Conn. 50, 56 (2007). The existence of a duty is a question of law. The court must determine whether the defendant owed the plaintiff a duty and the applicable standard of care. *See Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 171 (1988). In Connecticut, the duty of a defendant to a person on the defendant's premises depends on the entry status of the person, that is, whether the person is a trespasser, licensee or invitee. *See Considine v. Waterbury*, 279 Conn. 830, 859 (2006). For purposes of this motion the Court accepts that Giannaccio was an invitee at the time of the accident.

"A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe . . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." *Id.* To recover for breach of duty, the Gianaccios must allege and prove that the United States had notice, whether actual or constructive, of the very defect that occasioned the injury. *See DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 117 (2012) ("To defeat a motion for summary judgment in a case based on allegedly defective conditions, the plaintiff has the burden of offering evidence from which a jury reasonably could conclude that the defendant had notice of the condition and failed to take reasonable steps to remedy the condition after such notice.").

"Constructive notice is triggered by a general duty of inspection or, when the dangerous condition is not apparent to the human eye, some other factor that would alert a reasonable person to the hazard." *Id.* at 118. When determining whether the United States had constructive notice of the defect, the question is "whether the condition had existed for such a length of time that the [defendant's] employees should, in the exercise of due care, have discovered it in time to have remedied it. What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." *Kelly v. Stop and Shop, Inc.*, 281 Conn. 768, 777 (2007) (internal quotation marks and citation omitted). "Longer periods of time create the inference of constructive knowledge only when the defect is discoverable by reasonable care." *DiPietro*, 306 Conn. at 118, n.5. In the present case, the Giannaccios argue that regular inspections by GSA over a period of fifteen years create an inference of constructive knowledge. The United States counters that "in the exercise of ordinary prudence [it] had no way of knowing of the potential failure of the catwalk  . . . ." (Doc. #72-2, at 10).

The movant, the United States has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). With regard to the issue of notice, the United States has not met its "burden of showing the absence of a genuine issue as to any material fact." *Id.*  Once again, uncertainty as to the delegation or retention of responsibility for the catwalk that "properly can be resolved only by a finder of fact because [the uncertainty] may reasonably be resolved in favor of either party" precludes summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). The defendant's motion is denied as to the claim of lack of notice.

F.  CONNECTICUT STATUTE OF REPOSE

Citing Conn. Gen. Stat. § 52-584a, the United States argues that "[i]n the State of Connecticut, a statute of repose establishes an explicit limitation that no action seeking damages for any architectural deficiencies resulting in personal injury can be brought more than seven years from the date of the act or omission at issue." (Doc. # 72-2, at 24). Since the instant action was brought more than seven years after the design and construction of the catwalk in 1995-96, the United States contends that it is barred by virtue of Conn. Gen. Stat. § 52-584a.

The Giannaccios respond that the United States was required to raise the statute of limitations as a special defense and failed to do so. They also contend that Conn. Gen. Stat. § 52-584a applies only to architects, professional engineers, and land surveyors, and would not apply to the United States in any case.

The statute referenced by the United States, Gen. Stat. § 52-584a, is entitled "Limitation of action against architect, professional engineer or land surveyor," and provides in pertinent part as follows:

> No action . . . to recover damages . . . for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of . . . an improvement to real property . . . for injury to the person . . . arising out of any such deficiency . . . shall be brought against any architect, professional engineer or land surveyor performing or furnishing the design, planning, supervision, observation of construction or construction of . . . such improvement more than seven years after substantial completion of such improvement.

Conn. Gen. Stat. § 52-584a (a).

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood

accordingly." Conn. Gen. Stat. § 1-1(a). *See Oliphant v. Commissioner of Correction*, 274 Conn. 563, 574 (2005) ("When interpreting a statute, we look to its plain meaning."). "The clear mandate of General Statutes § 52-584a was to create a seven year absolute maximum on actions against architects and engineers, based upon the finite barrier of substantial completion, regardless of the nature of the claim, while leaving any other lesser limitations in effect." *Zapata v. Burns*, 207 Conn. 496, 508 (1988) (internal quotation marks omitted). The Court finds that pursuant to the plain meaning of Conn. Gen. Stat. §52-584a, the seven year period of repose does not apply in this case, because the defendant United States is not an architect, professional engineer or land surveyor. Because the Court has found that the statute of repose at issue does not apply in this case, it need not address the plaintiff's argument that the United States was required to raise the statute of limitations as a special defense.

### III. CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment (**Doc. # 72**) is **DENIED**.

SO ORDERED this   19th   day of September, 2016.


_____/s/   DJS_____

Dominic J. Squatrito
United States District Judge